preme Court of the United States." 28 U.S.C. § 2254(d)(1).

AFFIRMED.

UNITED STATES of America,
Plaintiff—Appellee,

v.

Roland ADAMS, Defendant—Appellant.

Nos. 05–10175, 05–10176.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 12, 2006.

Decided June 29, 2006.

Camil A. Skipper, Office of the U.S. Attorney, Sacramento, CA, for Plaintiff–Appellee.

Roland Adams, McRae, GA, pro se.

Charles M. Bonneau, Jr., Esq., Sacramento, CA, for Defendant–Appellant.

Before: RYMER, T.G. NELSON, and W. FLETCHER, Circuit Judges.

MEMORANDUM *

In June 2002, defendant Roland Adams was indicted on several counts of wire fraud and money laundering, as well as two counts of criminal forfeiture, arising out of his participation in an "advance fee" fraud. Adams agreed to plead guilty to conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371, and to conspiracy to launder money, in violation of 18 U.S.C. § 1001. The plea agreement included an appeal waiver and provided that the district court would hold a hearing on the forfeiture counts. After the forfeiture hearing, the district court ordered that Adams forfeit the equity he had in a house purchased in April 2002 as traceable to proceeds he had earned from his fraud, or, alternatively, as a substitute asset. Adams appeals this order.

The government argues that Adams waived his right to appeal the forfeiture order. We "construe ambiguities" in plea agreements "in favor of the defendant, ordinarily placing on the government responsibility for any lack of clarity." *United States v. Franco–Lopez,* 312 F.3d 984, 989 (9th Cir.2002) (internal citations and quotations omitted). The appeal waiver in the plea agreement provides that Adams will not appeal his "conviction and sentence[,]" and "[f]orfeiture is an element of the sen-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

tence...." *Libretti v. United States,* 516 U.S. 29, 38–39, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995).

■ The plea agreement, however, further provides that Adams "specifically gives up his right to appeal any fine and order of restitution the Court may impose...." Particularly given the plea agreement's provision for a separate forfeiture hearing, Adams could reasonably have believed that, by specifically referring to the fine and restitution aspects of his sentence, the appeal waiver did *not* refer to forfeiture. *See United States v. Transfiguracion,* 442 F.3d 1222, 1232 (9th Cir. 2006) (applying the *expressio unius* canon to a plea agreement). Construing this ambiguity against the government, we hold that Adams did not waive the right to appeal the forfeiture order.

A defendant convicted of money laundering shall "forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." 18 U.S.C. § 982(a)(1). In criminal cases, the government must prove by a preponderance of the evidence that property is subject to forfeiture. *United States v. Garcia–Guizar,* 160 F.3d 511, 517 (9th Cir.1998). The district court based its forfeiture order in part on evidence that, at the time Adams paid approximately $135,000 for his house, he had no legitimate source of income, and that he received two substantial wire transfers from Nigeria in the amount of almost $88,000. The fact that co-conspirators resided in Nigeria, and Adams' failure to show any legitimate provenance for these funds, support the district court's conclusion that $88,000 of equity in Adams' house was traceable to his fraud.

Most of the rest of the money Adams used for his house—approximately $32,-000—came from the sale of his prior home, which Adams had purchased in 1999. Although the indictment charged and Adams pled guilty to crimes beginning "no later than approximately February 26, 2001," the district court concluded, based on testimony at the forfeiture hearing, that Adams' fraud had begun "several years before 2001." Because the prior home was acquired with illicit funds, it reasoned, proceeds from its sale were traceable to Adams' fraud.

■ A criminal defendant, however, may be ordered to forfeit only property purchased with proceeds from the crimes "for which [he] was *convicted.*" *Garcia–Guizar,* 160 F.3d at 518 (emphasis in original). The phrase "no later than" in the indictment is too nonspecific to charge Adams with crimes beginning in 1999. *E.g., United States v. Laykin,* 886 F.2d 1534, 1542 (9th Cir.1989); *United States v. Cecil,* 608 F.2d 1294, 1297 (9th Cir.1979). Because Adams was not convicted of crimes committed in 1999, the district court wrongly considered the funds he used from the sale of his first home to pay for his second as traceable to his fraud.

■ The district court also found that, from 1999–2001, Adams received over $500,000 in tainted proceeds. As an alternative basis for its forfeiture order, the district court concluded that the house was a "substitute asset" for these funds and could be seized accordingly. *See* 18 U.S.C. § 982(b)(1); 21 U.S.C. § 853(p). However, it never determined how much of this money Adams received during the time period charged in the indictment, and thus as proceeds from the crimes for which he was convicted. "Substitute property" may be seized in lieu of property traceable to a fraud, but only "up to the value" of funds derived from the offense. *See* 21 U.S.C. §§ 853(p)(2), 853(a)(1). Without a determination of how much Adams earned from his fraud during the period charged in the indictment, the district court could not or-

der all of the equity in his house forfeited as a "substitute asset."

Adams raises a host of other challenges to his convictions and sentence. None has merit. Adams convictions and sentence are AFFIRMED, except that we VACATE the district court's forfeiture order and REMAND for further proceedings consistent with this disposition.