**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
             *Plaintiff-Appellee,*

             v.

JOHN DOE,
             *Defendant-Appellant.*

No. 15-10063

D.C. No.
3:14-cr-00042-
MMD-VPC-1

OPINION

Appeal from the United States District Court
For the District of Nevada
Miranda M. Du, District Judge, Presiding

Submitted July 5, 2016[*]
San Francisco, California

Filed November 29, 2016

Before: Barry G. Silverman and Jacqueline H. Nguyen,
Circuit Judges, and Marvin J. Garbis, Senior District
Judge.[**]

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[**] The Honorable Marvin J. Garbis, Senior United States District Judge for the District of Maryland, sitting by designation.

Opinion by Judge Garbis

## SUMMARY[***]

### Criminal Law

The panel affirmed a criminal judgment in a case in which the defendant was convicted of, among other offenses, aggravated identity theft in violation of 18 U.S.C. § 1028A.

The panel held that evidence of a defendant's repeated submission of false identifying information as part of successful applications to a government agency is sufficient to permit a reasonable jury to find that the defendant knew that the information belonged to a real person, as required to prove a violation of § 1028A.

The panel held that the 78-month sentence, imposed after an upward variance from the 18-to-24 month Guidelines range, was not substantively unreasonable.

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Robert W. Story, Reno, Nevada, for Defendant-Appellant.

Shannon M. Bryant, Assistant United States Attorney; Elizabeth O. White, Appellate Chief; Daniel G. Bogden, United States Attorney; United States Attorney's Office, Reno, Nevada; for Plaintiff-Appellee.

## OPINION

GARBIS, Senior District Judge:

Appellant John Doe[1] appeals from his convictions of aggravated identity theft under 18 U.S.C. § 1028A, for knowingly possessing and using the name, birth date, and social security number of another person when he applied to renew a Nevada driver's license and when he submitted a Form I-9 Employment Eligibility Verification form to his employer.

Doe contends that the Government failed to prove an element of the offense – specifically that he knew that the false identity he used belonged to a real person. He also challenges the reasonableness of his 78-month sentence.

This case presents the question, not previously addressed by this Court, of whether evidence of a defendant's repeated submission of false identifying information as part of successful applications to a government agency is sufficient

---

[1] To the date of this writing the Defendant, who has refused to provide his name, has not been affirmatively identified and is referred to as "John Doe."

to permit a reasonable jury to find that the defendant knew that the information belonged to a real person. We hold that it is and that Doe's convictions were thus based upon sufficient evidence. We also hold that the district court did not abuse its discretion with regard to Doe's sentence.

## I.  Background

The victim of Doe's identity theft, referred to herein as "V," was born in San Jose, California in 1963 and, in or about 1977, was assigned a social security number and card. No later than 1987, V's uncle sold V's birth certificate and provided his social security number to a man, not identified at trial. In 1987, someone, most likely Doe, used V's birth certificate, name, and social security number to obtain a "replacement" social security card from the Social Security Administration. For some 27 years, until Doe's arrest in 2014, V's identification was used without his authorization, most likely by Doe. In this regard, V received notices from the Social Security Administration (approximately every three years) that his name and social security number were being used in connection with multiple jobs in different places, including Nevada, with which V had no connection.

The evidence establishes that Doe's use of V's identity began no later than 2002 when Doe obtained a driver's license upon an application to the Nevada Department of Motor Vehicles ("DMV") that contained Doe's photograph but V's name and birth date. Doe renewed this license multiple times by resubmitting V's identifying information and had such a license in his possession when arrested in 2014.

On or around May 15, 2013, Doe submitted such a driver's license together with a social security card with V's

number to Doe's employer with a Form I-9 Employment Eligibility Verification.

The unauthorized use of V's identity caused him problems for approximately three decades. In the 1990s, his driver's license was suspended twice—including once while he was employed as a truck driver—because of DUIs committed in a different state by another person using his social security number. Tax refund checks due to him from the IRS were sent to a person in Nevada using his social security number. His wages were garnished three times to pay child support for children that were not his. More likely than not, these problems were caused by Doe's misuse of V's identity. In any event, it is clear that in 2013 V's unemployment benefits were halted because of child support payments owed (and not made) by Doe. V contacted Doe's employer to notify it that an employee was unlawfully using his identity.

On or around June 4, 2014, Doe was arrested in connection with a fraud investigation conducted by the Nevada DMV and the Department of Homeland Security. At that time, he was found to be in possession of a Nevada driver's license bearing his photo and V's identification information.

In this case, Doe was charged with two counts of aggravated identity theft under 18 U.S.C. § 1028A, unlawful production of an identification document under 18 U.S.C. § 1028(a)(1), and false attestation in an immigration matter in violation of 18 U.S.C. § 1546(b)(3). At trial, he was convicted on all charges. The district court sentenced Doe to 78 months of incarceration.

Doe appeals, challenging (1) the sufficiency of the evidence upon which his aggravated identity theft

convictions were based, and (2) the reasonableness of his sentence.

We have jurisdiction under 28 U.S.C. § 1291.

## II.  Discussion

### A.  Sufficiency of the Evidence

#### 1.  Standard of Review

This Court reviews the sufficiency of evidence supporting a defendant's conviction de novo.  We must construe the evidence "in the light most favorable to the prosecution" and must affirm the conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Nevils*, 598 F.3d 1158, 1161 (9th Cir. 2010) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

#### 2.  The Evidence Was Sufficient

Title 18 U.S.C. § 1028(A) provides that a person who "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person" in connection with an enumerated felony shall be sentenced to two years imprisonment.  18 U.S.C. § 1028A (2012).

To prove a violation of § 1028A, the Government must prove beyond a reasonable doubt that:

> 1.  The defendant knowingly transferred or used a means of identification of another person without legal authority;

2. The defendant knew the means of identification belonged to a real person; and

3. The defendant did so in relation to one of the crimes enumerated in 18 U.S.C. § 1028A(c).

*See Flores-Figueroa v. United States*, 556 U.S. 646, 647, 655–56 (2009); *United States v. Miranda-Lopez*, 532 F.3d 1034, 1037, 1040 (9th Cir. 2008).

Doe does not debate the Government's proof of the first and third elements. Doe was proven to have used V's means of identification without legal authority. And the use was proven to be in relation to crimes enumerated in 18 U.S.C. § 1028A(c), i.e., the violations of 18 U.S.C. §§ 1028(a)(1) and 1546(b)(3) for which he was convicted in the instant case.[2]

Doe acknowledges that the Government proved that V was a real person.[3] Doe contends however, that, without *direct* proof of his knowledge (such as proof that he knew V or had any connection to the sale of V's birth certificate and identifying information), the evidence was insufficient to

---

[2] The felonies enumerated in § 1028A(c) include violation of "any provision contained in this chapter (relating to fraud and false statements)." 18 U.S.C. § 1028A(c)(4). 18 U.S.C. §§ 1028(a)(1) & 1546(b)(3) are provisions contained in the chapter.

[3] In *United States v. Cardenas*, 408 F. App'x 106 (9th Cir. 2011), the defendant's conviction under § 1028A was reversed because no evidence was presented proving that a real person actually existed with the name and birth date given by the defendant to Border Patrol.

establish his knowledge that V was a real person.  The Court does not agree.

While direct evidence of the knowledge element is often presented in § 1028A prosecutions,**[4]** this Court has recognized that the element can be proven by circumstantial evidence.  *See Miranda-Lopez*, 532 F.3d at 1040 (citing *United States v. Villanueva–Sotelo*, 515 F.3d 1234, 1249 (D.C. Cir. 2008) ("[P]roving the defendant knew the stolen identification belonged to another person should present no major obstacle, as such knowledge will often be demonstrated by the circumstances of the case.")).  Thus, the issue here presented is whether the circumstantial evidence was sufficient to establish Doe's knowledge that the identity of V was that of a real person.

When "determining the sufficiency of circumstantial evidence, the question is not whether the evidence excludes every hypothesis except that of guilt but rather whether the trier of fact could reasonably arrive at its conclusion." *Nevils*, 598 F.3d at 1165 (quoting *United States v. Eaglin*, 571 F.2d 1069, 1076 (1977)).

---

**[4]** As noted in *Flores-Figueroa*, 556 U.S. at 656, in "the classic case of identity theft, intent is generally not difficult to prove.  For example, where a defendant has used another person's identification information to get access to that person's bank account, the Government can prove knowledge with little difficulty.  The same is true when the defendant has gone through someone else's trash to find discarded credit card and bank statements, or pretends to be from the victim's bank and requests personal identifying information.  Indeed, the examples of identity theft in the legislative history (dumpster diving, computer hacking, and the like) are all examples of the types of classic identity theft where intent should be relatively easy to prove, and there will be no practical enforcement problem."

The Government presented ample circumstantial evidence to establish Doe's knowledge that V was a real person. Most persuasive was proof of Doe's repeated success in obtaining renewed Nevada driver's licenses bearing Doe's photograph and V's name, date of birth, and social security number. In this regard, the Government introduced copies of applications to the DMV for Nevada driver's licenses and state identity cards in V's name. The "image history" associated with the applications dating back to 2002[5] showed photographs of Doe taken when he applied for reissuances of the driver's license and/or identity cards in V's name. Denise Riggleman, a DMV Compliance Enforcement Investigator, described the process involved in obtaining a new license or identity card through the Nevada DMV. Ms. Riggleman testified that new applicants must present proof of identity documents, such as a social security card or birth certificate, along with their applications to a DMV technician in person. This information is input into the DMV computer system, and the actual license is mailed to the applicant seven to ten days later.

In addition, the Government proved that Doe had submitted such a Nevada driver's license and a social security card in V's name as proof of identity in connection with an I-9 Employment Verification Form that he submitted to his employer.

In regard to the knowledge element of the § 1028A charge, the district court instructed the jury:

> Repeated and successful testing of the authenticity of a victim's identifying information by submitting it to a government

---

[5] Prior to 2002, the Nevada DMV did not maintain image histories.

agency, bank or other lender is circumstantial evidence that you may consider in deciding whether the defendant knew the identifying information belonged to a real person as opposed to a fictitious one. It is up to you to decide whether to consider any such evidence and how much weight to give it.

The jury found Doe guilty on both § 1028A charges.

This Court holds that the evidence of Doe's repeated successful use of V's identity in applications subject to scrutiny was sufficient to permit the jury to find that he knew that V was a real person. The Court's holding is consistent with decisions issued by its sister Circuits. *E.g., United States v. Valerio*, 676 F.3d 237, 244–45 (1st Cir. 2012) ("'[W]illingness to subject [a] social security number repeatedly to government scrutiny' is evidence that allows a reasonable jury to find that a defendant knew that a stolen identity belonged to a real person."); *United States v. Doe*, 661 F.3d 550, 562–63 (11th Cir. 2011) ("[A] defendant's repeated and successful testing of the authenticity of a victim's identifying information prior to the crime at issue is powerful circumstantial evidence that the defendant knew the identifying information belonged to a real person as opposed to a fictitious one."); *United States v. Gomez-Castro*, 605 F.3d 1245, 1249 (11th Cir. 2010) (concluding that "repeatedly and successfully test[ing] the authenticity of the birth certificate and social security card" to obtain a license, benefit card, and passport was sufficient to show that the identity belonged to a real person); *United States v. Holmes*, 595 F.3d 1255, 1258   (11th Cir. 2010) ("A reasonable jury also could have found that Holmes's willingness to subject the social security card repeatedly to government scrutiny established that she knew, all along,

that the social security card belonged to a real person and was not a forgery."); *United States v. Foster*, 740 F.3d 1202, 1207 (8th Cir. 2014) ("[R]epeated subjection of [a victim's] identity to a lender's scrutiny provides strong circumstantial evidence that the [defendant] knew the identity was real.").

Doe, asserting that he is a Mexican national, contends that it was unreasonable for the jury to find that he knew how U.S. government agencies and their verification procedures worked. His not being a citizen, although a resident, of the United States is a fact that the jury could have considered relevant but does not render the jury's finding unreasonable. As stated in *Gomez-Castro*, 605 F.3d at 1249 (affirming the conviction of a citizen of the Dominican Republic), "[K]nowledge [of verification processes] can be inferred reasonably based on ordinary human experience for which no special proof is required; a trier of fact can rely on common sense." *See also Holmes*, 595 F.3d at 1258 (concluding that a reasonable jury could infer that a defendant (not a United States citizen) knew that the government "requested and sometimes retained for many weeks" the submitted personal information to verify authenticity).

In sum, the Court holds that the circumstantial evidence presented, establishing Doe's repeated successful use of V's identification information, sufficed to permit the jury to find that he knew that V was a real person. Hence, he was properly convicted on two counts charging aggravated identity theft in violation of 18 U.S.C. § 1028A.

## B.  Reasonableness of Sentence

### 1.  Standard of Review

A district court's sentencing determination—whether inside or outside of the determined Sentencing Guidelines range—is reviewed for abuse of discretion.  A sentence will be set aside only if it is substantively unreasonable or the result of a procedural error.  *See Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Autery*, 555 F.3d 864, 872–73 (9th Cir. 2009).  In reviewing the substantive reasonableness of a sentence, we consider whether the district court identified the correct legal standard and whether its findings were illogical, implausible, or without support in the record.  *United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009).  Our review is deferential, and relief is appropriate only in rare cases when the appellate court possesses "a definite and firm conviction that the district court committed a clear error of judgment."  *United States v. Ressam*, 679 F.3d 1069, 1087–88 (9th Cir. 2012) (en banc) (quoting *United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1055 (9th Cir. 2009)).

### 2.  The  Sentence  Was  Not  Substantively Unreasonable

The district court determined that Doe's Offense Level was 14 and his Criminal History Category was II, yielding a Guideline range of 18 to 24 months.[6]  However, the district court varied upward and imposed a sentence of 78 months.

---

[6] The Court reduced Doe's recommended Offense Level from 16 to 14 after finding that there should not be a two-level obstruction of justice adjustment by virtue of Doe's refusal to admit his identity, an action intertwined with his constitutional right to deny his guilt.

Doe contends that his 78-month sentence is substantively unreasonable in light of the factors set forth in 18 U.S.C. § 3553(a). Specifically, he claims the sentence is of greater duration than necessary to comply with the purposes of sentencing and is unsupported by credible evidence.

At sentencing, the district court stated:

> The Guideline sentence, I think, does not adequately reflect the seriousness of the defendant's conduct in terms of the length, the nature of his conduct, and the profound effect on the victim. The defendant did not just steal the victim's identity and use it for a few years, he stole and utilized the victim's identity for about 27 years, which is more than half of the victim's life.
>
> . . . .
>
> And, as I noted, defendant didn't just live a normal, law-abiding life. He committed offenses under the victim's identity and further perpetuated the harm to the victim, having these offenses reflect under the victim's identity. And, as noted, defendant's conduct caused terrible disruptions to the victim and his family.

The Court finds that the district court properly considered, and stated the reasons for, the upward variance to the sentence imposed. In particular, the district court emphasized the substantial harm done to V over many years, as well as the criminal offenses committed by Doe in V's name, as revealed by Nevada public records. The district

court's decision was within a range of reasonableness. We hold that the district court's imposition of a 78-month sentence was neither illogical, implausible, nor without support in the record. *Hinkson*, 585 F.3d at 1251.

## III. Conclusion

For the foregoing reasons, we **affirm** Doe's convictions and sentence.