**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

OCT 20 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 20-50192 |
| Plaintiff-Appellee, | D.C. Nos. 2:17-cr-00505-RGK-1 |
| v. | 2:17-cr-00505-RGK |
| TURHAN LEMONT ARMSTRONG, AKA Jameel Jamal, AKA Bob Jimenez, AKA Hassan Karakra, AKA Emmett Louis, AKA Frank Masari, AKA Carlos Mata, AKA Carlos Rivera, AKA Emilio Sanchez, AKA Jose Soto, AKA T, AKA Terrence, AKA Turhan Lemont Walker, AKA Kent Warden, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted October 8, 2021
San Francisco, California

Before: HAWKINS and FRIEDLAND, Circuit Judges, and McSHANE,[**] District Judge.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Michael J. McShane, United States District Judge for the District of Oregon, sitting by designation.

Defendant Turhan Armstrong appeals his convictions and sentence for his involvement in a scheme to defraud banks, credit card companies, and other lenders by using stolen identities to apply for loans. A jury found Armstrong guilty of three conspiracy offenses and several associated substantive crimes, including aggravated identity theft. The district court sentenced him to 259 months in prison, the low end of the applicable Guidelines Range, based on a total offense level that included a 4-level aggravating role adjustment for Armstrong's involvement in the offense and an 18-level loss enhancement based on a total intended loss calculation exceeding $3.5 million.

We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We affirm Armstrong's convictions, vacate his sentence, and remand this case to the district court for resentencing.

1. The district court did not plainly err by failing to give a limiting instruction sua sponte regarding evidence of the alleged co-conspirators' guilty pleas. The Government did not introduce the pleas as substantive evidence of Armstrong's guilt or for some other wrongful purpose, and defense counsel did not object to the Government's mention of them. The defense made its own use of the pleas as impeachment evidence. Any suggestion of unfair prejudice from a lack of a specific limiting instruction is undercut by the general cautionary instruction given by the district court, and the substantial direct evidence of

2

Armstrong's guilt. While the Government's use of the pleas may well have required a limiting instruction upon proper objection, *see United States v. Halbert*, 640 F.2d 1000, 1006-07 (9th Cir. 1981), these circumstances cannot establish plain error, *see United States v. Garcia-Guizar*, 160 F.3d 511, 524 (9th Cir. 1998); *United States v. Tamura*, 694 F.2d 591, 601-02 (9th Cir. 1982).

2. The district court did not plainly err by giving the jury a *Pinkerton* instruction for conspiracies charged under 18 U.S.C. §§ 1029(b), 1349, and 1956(h). Federal courts have widely understood *Pinkerton* to apply to all conspiracy offenses in the criminal code, and Armstrong has cited no cases to the contrary. An error cannot be clear or obvious if there is no authority on point. *United States v. Gonzalez-Aparicio*, 663 F.3d 419, 428 (9th Cir. 2011). Armstrong's separation of powers argument likewise fails. His assertion that *Pinkerton* violates separation of powers principles boils down to an assertion that *Pinkerton* was wrongly decided, but we are bound to apply *Pinkerton* unless and until the Supreme Court overrules it, *Nunez-Reyes v. Holder*, 646 F.3d 684, 692 (9th Cir. 2011) (en banc).

3. Sufficient evidence supported Armstrong's conviction for aggravated identity theft under 18 U.S.C. § 1028A, based on his use of the alias "Jameel Jamal." Section 1028A requires the Government to prove "that the defendant *knew* that the 'means of identification' he or she unlawfully transferred,

possessed, or used, in fact, belonged to 'another person.'" *Flores-Figueroa v. United States*, 556 U.S. 646, 647 (2009). The Government introduced evidence from the Social Security Administration ("SSA") that a person named Jameel Jamal had applied for and obtained a Social Security Number ("SSN") about a decade before the start of the charged conspiracy, and that an SSA employee had verified the applicant's identity. The Government introduced evidence that Armstrong's co-conspirator would obtain real SSNs and pass them on to him. Finally, the Government offered evidence that Armstrong repeatedly and successfully tested the authenticity of the Jameel Jamal identity in applications to government agencies, banks, and other lenders. *See United States v. Doe*, 842 F.3d 1117, 1121 (9th Cir. 2016). Viewing this evidence in the light most favorable to the prosecution, a rational jury could have concluded that Armstrong knew that the "means of identification" associated with his alias "Jameel Jamal" belonged to a real person.

4. The district court erred by failing to follow Application Note 2(C) to United States Sentencing Guidelines Manual ("U.S.S.G.") § 2S1.1. Although Armstrong did not frame his objection at sentencing in the same terms he currently does, he did object to the imposition of the aggravating role adjustment, and the substance of his claim on appeal remains the same. *See United States v. Lloyd*, 807 F.3d 1128, 1174-75 (9th Cir. 2015) ("[I]t is claims that are deemed

4

waived or forfeited, not arguments.") (quoting *United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004)).  We therefore review the district court's interpretation of the Guidelines de novo.  *United States v. Gasca-Ruiz*, 852 F.3d 1167, 1170 (9th Cir. 2017) (en banc).

Application Note 2(C) requires the district court to determine the applicability of the aggravating role adjustment based on the defendant's role in the money laundering offense, and not on the underlying offense from which the laundered funds were derived.  U.S.S.G. § 2S1.1 cmt. n.2(C).  Here, the district court adopted the analysis in the Presentence Report, which analyzed Armstrong's leadership role solely based on his conduct in the underlying fraud conspiracy, directly contravening Application Note 2(C).  We cannot be sure that this error was harmless, and we therefore must vacate Armstrong's sentence.  *United States v. Munoz-Camarena*, 631 F.3d 1028, 1030 (9th Cir. 2011).

Because we vacate Armstrong's sentence on this ground, we need not and do not address Armstrong's contention that the loss enhancement was erroneous because the district court failed to make adequate factual findings that he "purposely sought to inflict" the full extent of the intended loss attributed to him, as Armstrong argues is required by Application Note 3(A)(ii) to U.S.S.G. § 2B1.1.  This provision's interaction with Guidelines General Application Principle § 1B1.3(a)(1)(B), which allows a court to attribute to a defendant the reasonably

foreseeable losses of his co-conspirators, presents a novel and challenging legal issue. The district court may address this question in the first instance on remand. Similarly, we do not address Armstrong's claim that the district court failed to properly consider the § 3553(a) sentencing factors. On remand, the district court will have another opportunity to carefully weigh those factors in light of the recalculated Guidelines Range to ensure that the new sentence is "sufficient, but not greater than necessary, to comply with the purposes" of § 3553. 18 U.S.C. 3553(a).

Accordingly, we affirm Armstrong's convictions, vacate his sentence, and remand this case for resentencing consistent with this disposition.

**AFFIRMED IN PART, VACATED IN PART, and REMANDED.**